Tatuóii, Chief Justice. —
It may be satisfactorily inferred from the cases cited, that any writing by which the intention of the party to dispose of his estate after his death appears, will amount to a devise, provided such intention be consonant to the rules of law, and the writing have the formalities required by the act. It is of no moment whether the testator would have called the instrument a deed,' or a will. The true inquiry is, how will it operate? and if the provisions in it are testamentary, it must operate as a will. The difference between a deed and a will is this: the former must take place upon its execution, or never; not by passing an immediate interest in possession, for that is not essential; but'it must operate as passing that interest when the deed is executed. Thus, where a father covenants to stand seized to the use of ,his son, reserving a life estate to himself, the deed takes effect at once, by passing an interest to the son. But a will can only operate after death. Does this instrument convey to the trustees any power or capacity of acting till after the testator’s death? It assigns over and conveys to the trustees, what? not any property; but “ that immediately after his decease, or as soon thereafter as may be found convenient,” he authorizes them to sell his bank stock and real estate, and apply the proceeds in the manner lie directs» They are hot authorized to take a single step in the business of his estate, till after his death; nor does he part with, or impair, his dominion and control over the property while he lives; indeed, it is a plain manifestation of what his intent was, that he directs the instrument to be recorded, only after his death; and there is no reason to believe that he ever parted with the possession of it during bis life time.
In Hixon v. William, (1 Ch. Ca. 248.) the writing was in the form of an indenture, and used the terms “grant, bargain and sell,” yet it was decreed to be a good will. In Proude v. Green (1 Mod. 117.) articles of agreement, which used the word “ give,” and were delivered as an *172 áct and deed, were held to be a will. The cases general* ly established the position, that whatever the instrument , may he called by the party, or however it may be considered hy him, if the intention upon the whole be, that it shall not operate before his death, it is then testamentary. In addition to this, there is much weight in. the reasoning, that this paper is so plainly referred to and incorporated in the will, as to become a part of it, although it had not been duly executed. But then it is indispensable, that the will should be executed according to the directions of the act of 1784. This is the only part of the case in which I have entertained any doubt; but after much consideration my opinion is, that it is not attested by two such witnesses as that act requires. If the act had merely required the will to be attested by two witnesses, the common law would have instructed us, that their competence at the time of proving the will, would have been sufficient. The words which follow in the act, two witnesses at least, no one of which shall be interested in the devise of said lands, must be supposed to have been inserted for some purpose; and this could only be to refer their competence to the time of attestation.
The preamble to this section of the act, professes to gqard against the undue influence of those about a testator in his last moments; and it must be a strong inducement to attempt the exercise of this influence, if a witness is. interested at the time of his attestation. The subsequent act of 1784, asserts, that it was the design of this requisite of the attestation of witnesses, to prevent fraud and imposition.
The statute of frauds required a will to be attested and subscribed in the presence of the devisor by three or four credible witnesses. Much difference of opinion existed whether this competence (for so the word was understood) should be referred to the time of attestation, or to that of proving the will; and I think it difficult to read the cases on this subject without a- conviction that the weight *173 of authority, as well as reasoning, is in support of the former opinion. In one of the earliest cases to be met with on this question, the testator disposed of his real estate by will, and gaye to one J. H. and his wife 10/. each for mourning, with an annuity of 20Z. to E. H. the wife of J. H. The will was attested by three witnesses, whereof J, II. was one. The legacies and ■ satisfaction for the annuity were tendered and refused. The question upon the special verdict was, whether or not the will was well attested according to the statute of frauds. The Court, was unanimously of opinion, that the right to devise lands was not a common law right, hut depended upon the powers given by the statutes, the particulars of which were, that a will of lands should be in writing, signed and attested by three credible witnesses, in the presence of the devisor;, that these were checks to prevent men from being imposed Upon; and certainly meant that the witnesses to a will (who are required to be credible) should not be persons entitled to any benefit under that will. In answer to the objection that nothing vests till the death of the devisor, and therefore at the time of the attestation the witness had no interest, the Court said, that he was then under the temptation to commit a fraud, and that is what the parliament Intended to guard against; that the-true time for his credibility is, the time of his attestation; otherwise a subsequent infamy, which the testator knows nothing of, will avoid his will, Austey v. Dowsing, (2 Stra. 1254.)
Lord Camden’s opinion, though at variance with that of the Judges who sat with him, in the case of Hindon v. Kersey, deserves much weight, not only from its cogent reasoning, hut from the circumstance that the legislature, within a few years after its delivery, adopted its policy and principles, by destroying the interest of the subscribing witness, whatever it might be at the moment of attestation. This was by the act of 25 George 2. passed about thirty years before our act of 1784. The whole controversy must have been known to many members of the *174 legislature of that (lay, and I think they had the same no-licy in view, though they have pursued a different course to attain it. The question to be asked on a will is, whe-^lCi' th® testator was in his senses when he made it, and that is the important moment when vigilance and caution áre most necessary in the witnesses, and when their minds should be most free from any bias that might warp their judgment. In other cases, according to the opinion" quoted, the witnesses were passive; here they were active, and in truth the principal parties to the transaction. The testator was entrusted to their care. The design of the .statute was to prevent wills from being made, which ought not to have been made, and always operates silently by intestacy. It is true the design of the statute was to prevent fraud, though no fraud appeared in that case, yet it prescribes a certain method, which every one ought to pursue to prevent fraud. As to the minuteness of the interest, as there was no positive law which was able to define the quantity of interest which should have no influence upon men’s minds, it was better to have the rule Inflexible, than to permit it to be bent by the discretion of the Judge.
Under this construction of the afct of assembly, which, however reluctantly, since it disappoints the will of the testator, I think the true one, my opinion is, that the witness was disqualified, since he, anil the other trustees, were authorized to retain a sufficient compensation for their trouble. This gave them an interest in the devise of the lands, and would, upon common law principles, render them incompetent to prove the will, as to the land. Though in England, the office of an executor who has no commissions or a legacy, is a burthensome one, here, it is well known to be sometimes a profitable one, and never injurious but from mismanagement.
Haxe, Judge
—There can be no doubt but that the paper writing which purports to be a will of the personal- *175 estate, was properly proved in the County Court, and that the judgment given thereon in the Superior .Court ■affirming, it was correct. But the question in reality submitted'to this Court is, whether, first, the paper writing purporting to be a deed, w'as in its nature testamentary; and if so, secondly, whether it was .legally proved, as the law prescribes. My opinion on the*last question renders it unnecessary to give any opinion upon the first.
The second question, in substance, is, whether iDavid ifarbrongh, who is a subscribing witness to that deed, with William Horton, the only other subscribing witness, was in law a proper witness to prove its execution. He is one of four trustees named in that instrument, for the purpose of selling the real estate of John Mlison, wiio executed it; and 'there is a clause in it as follows: “ and the said trustees are hereby authorized and directed to retain to their own use out of the moneys that may come to their hands, a sufficient compensation for their trouble in performing and executing the trust hereby reposed in them, and also for discharging any debt that may arise from a sick or death bed, or physicians’ aid if required, and fit* neral charges.”
By the.act of 1784, New Rev. ch. 204. sec. 11. it is enacted, that no last will or testament shall be good, in law or equity, to convey any estate in lands, &c. unless such will shall have been written and signed by the testator, and “ subscribed in his presence by two witnesses at least, no one of which shall be interested in the devise of said lands.” This act is supposed, by the plaintiff’s counsel, to have a resemblance in principle to the devising clausp of the English statute of frauds, in which it is declared, that all devises shall be attested and subscribed in the presence of the devisor by three or more credible witnesses, or else shall be utterly void and of none effect. The point has been much controverted in England, whether the subscribing witnesses should be credible or competent at the time-of attesting the will, or at the tkn* *176 when called upon to prove its execution. The question has also been examined with ability by the counsel in this' case. I do not think it necessary to give any opinion on because I think the act of 1784 puts the question at rest. I will only say, that if the test of qualification is to be applied at the time when the execution of the will is attempted to be proved, it appears to me that the term «credible, is a dead letter in the statute, because the rules of evidence would not permit other than competent witnesses (which Ld. Mansfield, in 1 Burr. 414. says the term credible witnesses in the statute means,) to be examined to prove the execution of a will, if the statute had not made such provision.
The same remark may be made as to the act of 4784. If a subscribing witness to a will is interested in a de7 vise therein, and afterwards becomes disinterested by a release, or by any other means, and thereby a good witness, tiie clause would be inserted for no purpose, which declares that “ no one of which shall be interested in the devise of the said lands,” because if no such provision had been made by the act, the rules of evidence would prevent any witness from being examined who was not at the time disinterested.
But T think the legislature, by the act in question, intended to remove temptation out of the way, and not suffer wills to be tnade through the procurement of fráud; and this they could not better accomplish than by not suffering any person to attest a will, unless at the time the person so attesting was disinterested in the thing devised.
If, therefore, David Yarbrough had an interest in the instrument he attested, at the time he attested it as a witness, the release by him made, will not restore his 'competency.
The clause which I have before recited furnishes employment for him and gives compensation for it. It is like the common case of allowing commissions on the amount ot the business transacted. This case does not resemble *177 those cases where witnesses are received from necessity* and for the sake of trade, as when a person is employed to sell goods, and is to have a certain per cent, on the -amount sold, he is competent to prove the contract of sale. (2 H. Bl. 590. 3 Wils. 407.) Sec Guillim Bac. Evidence B.” Norris' Peake 240. It is very true, the interest in the Avitness in this case is very small; but this Court, on that account cannot overlook it; it cannot judge between different degrees of interest. If this objection was overruled, at some future time a witness somewhat more interested might be offered; and so on, till the rule which rejects interested witnesses would be done away altogether. The rules of evidence are of great consequence. Ld. Kenyon says, our laws, liberties and property depend upon them; they ought to be preserved inviolate.and unshaken. For these reasons I am of opinion, that David Yarbrough, (whose character is admitted to be pure and upright,) is not in law7 a competent witness to prove the paper writing, (which on the face of it purports to be a deed,) which, in the Court below7, has been offered and proved as a will.
Heeberson, Judge. —
There is no dispute as to the instrument in the form of a will. I am of opinion that the other paper, in form a deed, is testamentary as regards the personal property therein mentioned. I am rather inclined to think that it is not testamentary as regards the real estate; but on this point I wish it understood that I give no opinion, as it is unnecessary, for if it was testamentary,'! think that it is not sufficiently proven; Yar-brough, one of the two attesting witnesses, being therein appointed a trustee for the sale of the lands, and entitled to a compensation for his services therefor; for the disqualification relates to the time of attestation, and not to tfie time of giving evidence.
I concur in the opinion, that the judgment of the Su,-■perior Court be reversed so far as the prebate of the said *178 last mentioned instrument is established, and affirmed as to the other parts of the judgment; and that the plaintiffs pay the costs of this Court, and that the defendants pay the costs below, so far as regards the establishment of this instrument as a will of personal estate, and that the plaintiffs pay the residue of the costs.